## Commonwealth *v.* Visotsky, Appellant.

Argued September 27, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William T. Connor,* with him *John R. K. Scott,* for
appellant.

*John P. Boland* with him *Raymond A. Speiser,* As-
sistant District Attorneys, and *Charles F. Kelley,* Dis-
trict Attorney, for appellee.

OPINION BY PARKER, J., November 10, 1937:
The defendant was tried on three bills of indictment,
one charging aggravated assault and battery, one charg-

ing him with keeping a disorderly house, and the third charging that he used premises No. 925 Pine Street "for the purpose of prostitution and assignation." He was convicted and sentenced on the last indictment, and found not guilty on the others. The sole question on this appeal goes to the admission of certain testimony given by witnesses for the Commonwealth as to the reputation of the premises shown to have been in possession of the defendant. Counsel for appellant contends that "it did not appear the witnesses giving such testimony had knowledge of the general reputation of the house and [objects] because their evidence was based upon what had been told them." We are all of the opinion that the judgment should be affirmed.

The Act of June 30, 1923, P. L. 982 (18 PS 801 et seq.) makes it a misdemeanor to use any place, structure, building or conveyance for the purpose of prostitution or assignation. The fourth section of that act provides: "In the trial of any person charged with the violation of any of the provisions of this act, testimony concerning the reputation of any place, structure, or building, and of the person or persons who reside in or frequent the same, and of the defendant, shall be admissible in evidence in support of the charge." Before the passage of that act, the reputation of the inmates and frequenters of an alleged bawdy house could be proved. It was also competent to prove that the house itself had acquired the reputation of being a bawdy house: *Com. v. Newhart,* 97 Pa. Superior Ct. 216; *Com. v. Brink,* 49 Pa. Superior Ct.. 620; *Com. v. Salawich,* 28 Pa. Superior Ct. 330. The same character of evidence is receivable as to the keeping of a common gambling house which is a species of disorderly house: *Com. v. Ciccone,* 85 Pa. Superior Ct. 316. The effect of the Act of 1923 was to affirm the rule as to prosecutions under that statute and to render admissible the "reputation of the de-

fendant in connection with, or with respect to, the offense charged": *Com. v. Newhart*, supra.

Ten police officers whose duties took them to the vicinity of the premises in question were called as witnesses by the Commonwealth and were interrogated as to the reputation of the house in question. The assignments of error cover the testimony of eight of these officers. The testimony of one police officer, Samuel Speiser, is typical of that given by the officers whose testimony is the subject of assignments of error. He testified that he was in the 19th district and had been there eight years; that he knew the house at No. 925 Pine Street and the defendant. He further said: "Q. Have you talked with other officers concerning the reputation of that house? A. I have. Q. What is its reputation? MR. SCOTT: I object. THE COURT: I assume your reasons are the same? MR. SCOTT: Yes. (The objection was overruled. An exception was noted for the defendant.) A. A house of assignation. (There was no cross examination). MR. SCOTT: I ask that the testimony be stricken from the record. (The motion to strike out was denied. An exception was noted for the defendant)."

The argument of the appellant is that Speiser and his fellow officers testified as to reputation and not *general* reputation, and that his evidence was based upon what had been told him. In other words, the contention is that the officer was not competent to testify and that in any event he should have been asked as to the *general* reputation of the house. It will be noted that in the Act of 1923 the word "reputation" is not qualified by the adjective "general." Nevertheless, the qualification was implied in the act and with equal reason may be implied in the question. Webster defines reputation: "The estimation in which one is generally held." Reputation in a legal sense conveys the same meaning: 7 Words & Phrases 6119. It is

not open to argument that where reputation is admissible to prove an element in a charge made, it is the general reputation which must be shown: *Wike v. Lightner*, 11 S. & R. 198; *Snyder v. Com.*, 85 Pa. 519; *Com. v. Howe*, 35 Pa. Superior Ct. 554; *Com. v. Jones*, 280 Pa. 368, 124 A. 486. Neither is the witness' knowledge of reputation to be based on particular acts as distinguished from what he has heard and the inquiry must be limited to the general speech of the community on the subject: *Kimmel v. Kimmel*, 3 S. & R. 336; *Snyder v. Com.*, supra.

However, the defendant was represented by able and experienced counsel and could have had any advantage of the legal principles involved had he so desired. Had counsel seen fit to object to the question on the ground that the witness had not shown his competency to answer, or had he asked permission to cross examine the witness as to his competency before the witness testified as to the general speech of the community, doubtless the court would have extended to the defendant his full legal rights. Counsel did not see fit to pursue that course.

Just prior to the interrogation of this police officer, Dr. Charles S. Hirsch, who had resided for thirty years in the block where this house was located, had shown his familiarity with the premises, had testified to facts showing the manner in which the premises were conducted and had testified to the character of persons who were frequenters of it. The record of Dr. Hirsch's testimony then shows: "Q. Have you discussed the reputation of that house with others? A. I have. Q. What is the reputation of that house? Mr. Scott: I object. The Court: Why? Mr. Scott: I take it that is not the proper way to put a question such as he has put, and, at the present time that question is not relevant to the issue in this case. The Court: What would the proper way be, Mr. Scott? Mr. Scott: Surely I am not

going to instruct the Court, I would not presume to do that, I merely can state my idea of the law, and according to my idea of the law that question is not put properly. I would not put myself in the position of telling your Honor what the law is. (The objection was overruled. An exception was noted for the defendant.) A. It has the reputation of being a house of assignation. Mr. Scott: I ask that that be stricken out. (The motion to strike out was denied. An exception was noted for the defendant.)"

Not only did counsel decline to indicate to the court that he objected to the question on the ground that the witness had not shown sufficient knowledge or experience to make an answer or because reputation should be qualified by the word "general," but he predicated his objection on the ground of irrelevancy. Defendant did not even cross examine the witness as to his competency. A fraction of the labor expended in this appeal employed when the matter was before the jury would have avoided all the questions now raised. Further, with relation to the competency of Speiser, it appeared that he was a police officer in that district and had talked with others concerning the reputation of the house, and there is nothing in the testimony of this officer to indicate that his opinion was formed on other basis than the common speech of those who knew the premises. Appellant argues further with reference to the competency of some of the character witnesses that "their evidence was based upon what had been told them, what persons said of the reputation of the house." When, in this state, the character of a person or house is a relevant fact it is evidenced by general reputation and by that only. Since it is the common speech of the community that is testified about by the witness, he may very properly take into account what others have said and what he has heard as to that reputation, provided that he, in the end, bases his conclusion on what

the people generally say. The witness undertook to state such reputation and, as we have indicated above, counsel for the defendant did not see proper to test his competency or accuracy by cross examination, or to object to the receipt of the evidence on the ground of incompetency. There is consequently no merit in this objection.

While a witness as to character must be shown to have adequate knowledge on the subject, "a claim to knowledge is, however, prima facie sufficient": 22 C. J. 481. In the absence of a specific objection to such competency or a request to cross examine the witness as to his competency before he is permitted to testify as to what the reputation is, it is not reversible error to receive such testimony.

There was sufficient admissible evidence, exclusive of that which forms the basis of the assignments of error on this appeal, to sustain the verdict. As was stated by Judge PORTER of this court, a master in the domain of criminal law, in *Com. v. Ciccone,* supra (p. 319): "It may be that such evidence, standing alone, would not be sufficient to establish the character of the place, but, it is a circumstance to be weighed with others." If ten police officers whose duties placed them in the locality of the house in question for a number of years were not competent to testify to the reputation of this house, it is difficult for us to conceive where such witnesses could be found. It appeared that the house had been raided eight different times and testimony was shown with relation to the conditions that were disclosed on some of these raids. There was evidence of disturbances at the premises and of conduct by frequenters of the place consistent with the charge made, as well as evidence as to the character of those going to the premises. This undoubtedly tended to make a reputation for the house when it was passed from person to person in the neighborhood, and it would be

strange indeed if the police officers on the beat did not know the general reputation of the place.

Judgment affirmed.